v. Yerdon v. New York State. So Mr. Yerdon? Yes, hello, thank you. Good morning. So you have five minutes total, but you've reserved a minute for rebuttal. So the floor is yours. Thank you. Good morning, your honors. I'm Edward Yerdon, Pro Se, PMP. I was grateful that you overturned the previous dismissal. It wasn't you, but the court. Thank you very much. It gave me a lot of hope. Today, I will try to make my argument concise. I wish my filing to be amended so that I am filing against Mrs. Poitras and Mrs. Roman solely and not against the Department of Motor Vehicles, and I wish for this to be in a professional capacity as well. I have read cases, and I see many times that Pro Se plaintiffs make many mistakes, and I also don't see them winning very often. So I have done my best to research the case, but most of the claims in the defendant's argument are trying to use technicality to manipulate the statements that I've made. For example, the ultimatum that Mrs. Poitras made was vague itself, and so therefore, them trying to argue that the ultimatum wasn't clear, it was, it was vague. And therein lies the actual discrimination, the irony that my opponent claims that I didn't make clear, and I find it very biting. My understanding is that my claim only needed to be a simple statement. I have stated that I had disabilities. I've stated what they are. And I understand, and I understood, I thought by the chain rule of logic, that the name of my disabilities would entail that it satisfies significant life activities being impaired. In my understanding, that was only supposed to be a simple statement. I understood that the plaintiff doesn't have to provide the burden of proof until discovery either. There was a tremendous amount of research and investigation done on my case by New York State Division of Human Rights. I did have a lawyer who told me that I could go to the federal court with my case after we parted ways. It was Adam Grogan, Esquire of Tully-Ranke. All of this would become apparent if my case makes it to, makes it to discovery, including how Mrs. Poitras was even caught in a lie during her interview with the New York State Division of Human Rights. What happened at the DMV is very simple. I informed Mrs. Poitras that I was going to get tested for autism in October of 2019. My expectation was that I would be supported. Instead, she immediately started her moving tasks. This caused my anxiety and compulsions to get much worse. Mrs. Poitras gave me the first poor performance review in about December, and in September she had taken me aside. Even in September, she had taken me aside and told me that I was doing a great job. It took about four months from originally telling her about the autism test to get the diagnosis. And in January, I wrote on a piece of paper that I actually was diagnosed incorrectly at the time. Can I interrupt you for a second, Mr. Yergin? Yes, sure. I mean, I think one of the sort of threshold questions is whether the Americans with Disabilities Act allows a plaintiff like yourself to bring a claim against an individual, you know, worker or supervisor. And so we've held that with respect to the retaliation claims, that you can't bring a claim against an individual. You can only bring it against the employer. And, you know, arguably many other courts have found the same with respect to the discrimination claim. Can you speak to that? Is that something you feel prepared to speak to? My understanding was that, like, in their argument that they were saying that for professional purposes, but then they said that that would be redundant, which they're kind of trying to set up a catch-22, is what my understanding of their argument was. And they were saying that- Well, there's sort of two things going on here, and it is a little complicated, I agree. One is that you can't bring an official capacity claim, or an official capacity claim is no different than bringing a claim against the employer. And if the employer is the state, then there's a sovereign immunity issue, you're not allowed to sue a state unless Congress has said you can, and the states have sort of consented to it. The other issue in an individual capacity is whether or not the statute, the Americans with Disabilities Act, allows an individual capacity suit. And so that's basically saying not in their official capacity, but just as individuals, to be individually liable. Well, they were- We've spoken already on that with respect to retaliation claims. I did- they were acting in professional capacity, because, I mean, the act that they carried out was terminating my employment. So it wasn't a personal capacity. As far as the retaliation goes, I did file a couple of complaints. You know, when the ultimatum was given, I filed a complaint immediately to try to get the interact- iterative process going, you know, to try to stop them from doing what they were doing to save my job, and they didn't do anything. And 30 days later, they just terminated me and, you know, called the psychiatric center as I was walking- I mean, that's all going to the merits. I was asking more of a sort of a threshold question about the ability to bring a suit under the statute. Yeah. I would have to research that, I think. Okay. So- All right. Well, you're a little over, but that's okay. You have another minute for rebuttal. Let's now hear from Mr. Wagner, and then you'll get a chance to respond. Thank you, Mr. Heard. Thank you. Mr. Wagner? Thank you, Your Honors. Doug Wagner on behalf of the State Appellees. All the defendants here have sovereign immunity under- against claims brought under the ADA in both Title I and Title V. The Supreme Court settled Title I in Garrett, and all of the district courts in this circuit have reached the same conclusion as to Title V. Notably, every circuit that has reached the issue in published decisions has also held that Title V does not validly abrogate sovereign immunity. This Court need go no further. As to the individual liability, Judge Sullivan, you point out that in a published decision, this Court has said that there is no individual liability for retaliation claims. That's true. This Court has also said the same in unpublished decisions as to claims under Title I. I believe the case is Darcy. It's cited in our brief. And there's no- It's unpublished, so- It's certainly unpublished. But there's no reason to believe that the analysis would be any different. When the Court traces the case law back, this goes back to interpreting the term employer, which has the same language in Title VII. And there's no reason to believe that Congress meant to subject individuals to liability when they borrowed the same definition. Excuse me. Are there any claims against the individuals under state law? No. This complaint was exclusively brought under the ADA. And so, because all the defendants have sovereign immunity, this Court need go no further than upholding its precedent that there is sovereign immunity here. Just a word on the Ex Parte Young issue. The plaintiff has requested two forms of injunctive relief. The first is an apology letter. And the second is staff training involving the DMV. Neither of these qualify under Ex Parte Young. The first is not prospective. It's retrospective. And as for the staff training, it doesn't tie itself to an ongoing violation. It ties itself to the discrimination alleged in 2020. I'll just say one last word on pleading disability. The plaintiff argues on appeal that he did adequately plead disability. But in the complaint, he pled no facts beyond a diagnosis. This Court has said that's insufficient. And there's no basis to reconsider those rulings. If there are no further questions. All right. Thank you. Thank you very much, Mr. Wagner. Mr. Yerden, you have a minute for rebuttal. Yes. Thank you. So the thing is, is that the specific disability, obsessive compulsive disorder, is listed in the ADA. And so is mental illness is broadly listed in what I read. And then also learning disabilities, ADHD. I mean, these are the things that I mentioned that I had. So the other thing is I find it kind of fascinating that just because my disabilities are invisible and I'm not in a wheelchair, that this can happen. That the argument of whether or not I'm disabled, I just kind of took offense to that. But anyway, so what I'd like, I mean, if it'd be possible, I mean, if this could be sent to the correct court, that would be nice. I'd like to continue my fight. I feel like justice wasn't served. And I feel like we need to keep fighting in order to make sure that people like myself, people with cognitive challenges, aren't treated like they're stupid. Because intelligence and cognitive are different things. Thank you. Well, I don't think anyone would disagree with that. Thank you, Mr. Yerden. We will reserve decision, but thank you both.